[No. D009794. Fourth Dist., Div. One. June 27, 1989.]

IRWIN J. GUEDALIA et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JOHN M. LOMAC, JR., et al., Real Parties in Interest.

COUNSEL

Sharron Voorhees and William Duerksen for Petitioners.

No appearance for Respondent.

Bamberg & Associates, Daniel F. Bamberg and Shawn E. Caine for Real Parties in Interest.

OPINION

FROEHLICH, J.—In this proceeding in mandate, petitioners Irwin J. Guedalia and James C. Martinez III (Guedalia) request that we order the superior court to vacate its order denying Guedalia's peremptory challenge

to Judge Pate, and that we vacate all orders of the superior court which were entered subsequent to the date on which the peremptory challenge was allegedly wrongfully denied. We conclude that Guedalia's failure to seek relief by mandamus within 10 days after he was notified of the denial of his peremptory challenge precludes Guedalia from obtaining any relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Guedalia filed his complaint for damages against real party in interest John M. Lomac, Jr., in early 1988, and subsequently obtained a default judgment against Lomac. Guedalia subsequently sought to execute on the judgment, and Lomac responded by moving to set aside the default and default judgment.

The hearing on Lomac's motion to vacate the default was continued on two occasions to allow the respective parties to file papers in support of and in opposition to the motion. The hearing on the various motions was finally held on January 26, 1989.

Prior to the January 26, 1989, hearing, Guedalia filed a peremptory challenge, pursuant to Code of Civil Procedure[1] section 170.6, to disqualify Judge Pate from ruling on any matters in the action. The section 170.6 challenge was filed and served on January 19, 1989. At the hearing on January 26, Judge Pate found that the section 170.6 challenge was untimely, announced that Guedalia's section 170.6 motion was denied, and entered an order denying the motion. Judge Pate thereafter heard arguments on the substantive motions of the parties, and took the motions under submission. On February 8, 1989, Judge Pate entered a minute order granting Lomac's motion to set aside the default and default judgment.

Lomac thereafter calendared a hearing on his demurrer to Guedalia's second amended complaint. Guedalia opposed Lomac's demurrer on its merits. At the March 31, 1989, hearing on Lomac's demurrer, a different judge sustained the demurrer without leave to amend. On April 6, 1989, Guedalia filed his petition for writ of mandate with this court, seeking to escape both from the order vacating the default and from the order which sustained Lomac's demurrer without leave to amend.

 We conclude Guedalia's failure to seek appellate relief, by way of mandamus, within 10 days after he had notice that Judge Pate had denied Guedalia's section 170.6 motion, precludes Guedalia from obtaining any relief based on the allegedly erroneous denial of his section 170.6 motion.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

## Discussion

1. *The Failure to Seek Appellate Review of an Allegedly Erroneous Denial of a Disqualification Motion Under Code of Civil Procedure Section 170.6, by Petition for Mandamus Sought Within 10 Days After Notice of the Decision, Precludes the Party From Obtaining Appellate Relief.*

A. The Exclusive Avenue to Obtain Appellate Review of the Denial of a Motion to Disqualify a Judge Is by Writ of Mandate Filed Within 10 Days of Notice of the Decision.

In 1984, the provisions of title 2, chapter 3 of the Code of Civil Procedure, which deal with the disqualification of judges, were substantially overhauled by the Legislature. (See Stats. 1984, ch. 1555, § 1 et seq., pp. 5479-5484.) The Legislature adopted various changes to the substantive grounds on which a party could challenge a judge "for cause" (see 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, §§ 79-100, pp. 95-117); adopted procedural rules for asserting and resolving "for cause" challenges at the trial court level (see § 170.3, subds. (a) through (c)); and adopted a limitation on appellate review of disqualification determinations. Regarding appellate review, the Legislature declared: "The determination of the question of the disqualification of a judge is not an appealable order and *may be reviewed only by a writ of mandate . . . sought within 10 days of notice to the parties of the decision* and only by the parties to the proceeding." (§ 170.3, subd. (d), italics added.)

The language of the statute is plain and unambiguous: A party may *only* seek appellate relief from the improper denial of a motion to disqualify a judge by a timely petition for mandamus. At least one court has held that because the unambiguous language of section 170.3, subdivision (d), demonstrates a clear legislative intent to make mandamus the exclusive remedy for such errors, such errors are not grounds for reversal on appeal. (*People v. Jenkins* (1987) 196 Cal.App.3d 394, 402-404 [241 Cal.Rptr. 827].) The *Jenkins* court (dealing with a challenge for cause) concluded mandamus was the exclusive remedy based on both the statutory language and on the legislative history which evidenced an intent to make this remedy exclusive. (*Id.* at p. 404.)

We believe *Jenkins* correctly analyzed the statutory language, and the underlying legislative history, and we therefore conclude that section 170.3, subdivision (d) prescribes the *exclusive* avenue of appellate relief to a party

who is aggrieved by the allegedly erroneous denial of his motion to disquali-
fy a judge.[2]

## B. The 10-day Limitation Applies to Motions Under Section 170.6.

Guedalia argues that section 170.3, subdivision (d)'s 10-day time limita-
tion for seeking mandamus relief does not apply to peremptory challenges
under section 170.6, relying on *Woodman* v. *Superior Court* (1987) 196
Cal.App.3d 407 [241 Cal.Rptr. 818]. For several reasons, we conclude the
10-day limitation is applicable to any motion to disqualify a judge, whether
the challenge is peremptory or "for cause," and we therefore disagree with
*Woodman*.

First, the plain language of section 170.3, subdivision (d) does not pur-
port to limit its applicability to challenges "for cause." To the contrary, it is
broadly applicable to any "determination of the question of the disqua-
lification of a judge . . . ." ■ It is a paramount canon of statutory
construction that statutes should be given effect according to the usual and
ordinary import of the words used in the statute. (*Palos Verdes Faculty
Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658
[147 Cal.Rptr. 359, 580 P.2d 1155].) ■ The broad language plainly
evinces an intention that section 170.3, subdivision (d) has generic applica-
bility to all disqualification motions, including section 170.6 motions.

■ Moreover, various parts of a statutory scheme should be construed
in the context of the statutory framework as a whole. (*Palos Verdes, supra,*
21 Cal.3d at p. 659.) ■ Here, section 170.3, subdivision (d) is part of
the provisions of title 2, chapter 3 of the Code of Civil Procedure. That
chapter deals exclusively with questions of disqualification of judges, and

---

[2]Our conclusion is buttressed by reference to an analogous statutory scheme relating to
motions to quash for lack of personal jurisdiction. Section 418.10 provides that if a motion to
quash is denied, a party may (within 10 days, unless extended by the trial court) petition for
mandamus for review of that order. The court in *McCorkle* v. *City Of Los Angeles* (1969) 70
Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453] concluded that this statute (despite its permis-
sive language) rendered mandamus the *exclusive* remedy for a party who wished to assert his
jurisdictional objection while nevertheless preserving his right to defend on the merits if his
challenge was unsuccessful. See also *Neihaus* v. *Superior Court* (1977) 69 Cal.App.3d 340
[137 Cal.Rptr. 905] [filing of answer without following statutory procedure for pursuing im-
mediate writ petition waived jurisdictional challenge].
 The statutory schemes are parallel: Both deal with issues of personal jurisdiction to adjudi-
cate disputes; both provide that challenges not promptly interposed are waived; and both
provide statutory mechanisms for immediate appellate review of challenges. Since *McCorkle*
concluded that relief by mandamus was the exclusive remedy (even though the statutory lan-
guage was permissive), the more explicit language of section 170.3, subdivision (d) (i.e., "re-
viewed only by a writ of mandate") provides an even stronger basis for concluding its reme-
dies are exclusive.

encompasses within its ambit two kinds of disqualification determinations: "for cause" and "peremptory" determinations. Because section 170.3, subdivision (d) is part of this statutory scheme, its limitation on appellate review of disqualification determinations appears fully applicable to *any* disqualification motions within the ambit of chapter 3, including motions under section 170.6.

The *Woodman* court reached a contrary conclusion based on its review of the legislative history. Our review of that same legislative history, however, reveals no intention to *exclude* section 170.6 determinations from the *appellate review* provisions enacted by the Legislature. While *Woodman* placed great significance on the legislative statement that the 1984 bill "would not amend that section [i.e., section 170.6]" (196 Cal.App.3d at p. 407, italics omitted), our review of the context of that statement convinces that the reference simply stated the obvious: that the 1984 legislation did not intend to abrogate the *substantive* right to (or the *trial court* procedures for interposing) a peremptory challenge, but was instead directed toward substantive and trial court procedural reforms of "for cause" challenges. Our conclusion that *appellate relief limitations* are applicable to peremptory challenges does not contravene the legislative history, since application of appellate relief limitations leaves untouched the substantive and trial court procedural aspects of peremptory challenges.

Our second reason for concluding the 10-day limitation is applicable to section 170.6 motions rests on our belief that the policies underlying section 170.3, subdivision (d) are equally applicable to "for cause" and peremptory challenges. When a disqualification motion is erroneously denied, any subsequent orders and proceedings by the disqualified judge have been characterized as "void for want of jurisdiction." (See, e.g., *Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 831 [209 Cal.Rptr. 844].)[3] Section 170.3, subdi-

---

[3] The notion that the subsequent orders of the disqualified judge are "void" for want of jurisdiction, as opposed to being merely "voidable," has been questioned. (See 2 Witkin, *supra,* §§ 74-76, pp. 88-92.) The court in *In re Christian J.* (1984) 155 Cal.App.3d 276 [202 Cal.Rptr. 54], in a well reasoned opinion, declared that a judgment entered by a judge, who had erroneously denied a section 170.6 challenge, was not void but was only voidable. There, the People asserted a section 170.6 challenge, which was erroneously denied. The matter proceeded to trial, and the judgment was adverse to the minor. On appeal, the minor contended that the section 170.6 motion deprived the court of jurisdiction, rendering the judgment *void* and unenforceable against the minor. The court distinguished between a fundamental lack of jurisdiction (i.e., the entire absence of power to rule on matters) from other defects such as acts in excess of jurisdiction, noting that the former cannot be conferred by consent, while the latter defects are subject to waiver or consent. The court concluded that disqualification motions raise the latter type of jurisdictional issue: "Although the cases frequently refer to the subsequent orders or judgment of a disqualified judge as absolutely void for lack of jurisdiction and thus open to attack at any time prior to final judgment [citations], it is clear that the right to urge the disqualification of a judge . . . may be waived by the parties. [Citations.]

vision (d), by requiring a dissatisfied litigant immediately to pursue appellate review, fosters judicial economy by eliminating the waste of time and money which inheres if the litigation is permitted to continue unabated, only to be vacated on appeal because the subsequent rulings and judgment were declared "void" by virtue of the erroneously denied disqualification motion. The court in *People* v. *Jenkins, supra,* 196 Cal.App.3d 394, reviewed the legislative history of 170.3, subdivision (d), and concluded section 170.3, subdivision (d) was designed with this objective in mind: "The Legislature obviously opted for speedy review of a disqualification ruling, since permitting that ruling to be attacked later on appeal of the judgment could invalidate every ruling made by the trial court judge after the disqualification motion was denied." *(People* v. *Jenkins, supra,* 196 Cal.App.3d at pp. 403-404.)

In addition to judicial economy, section 170.3, subdivision (d) promotes fundamental fairness. If the erroneous denial of a disqualification motion may be raised at any time to void all subsequent actions by the challenged judge, the challenging party is provided an intolerable windfall: If the ultimate judgment is favorable, he has prevailed and the issue is moot; if, however, the ultimate judgment is unfavorable, he has lost nothing since the judgment is "void." In essence, an unsuccessful challenge to a judge would provide "two bites at the apple." The court in *Stebbins* v. *White* (1987) 190 Cal.App.3d 769 [235 Cal.Rptr. 656] stated its belief (albeit in dicta) that denials of peremptory challenges should be reviewable under the expeditious provisions of section 170.3, subdivision (d), in part because: ". . . [I]t would constitute an intolerable windfall to permit a litigant to speculate on the outcome of the proceedings and reap the benefit of an automatic reversal in the event of an unfavorable judgment." *(Stebbins* v. *White, supra,* 190 Cal.App.3d at p. 784, fn. 9.) The court in *In re Christian J., supra,* 155 Cal.App.3d 276, although dealing with an issue slightly different from the "waiver of error by failure to seek writ relief,"[4] bluntly stated a parallel rationale: " ' "It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby *permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable,*

Consequently, *the actions of a disqualified judge are not void in any fundamental sense but at most voidable if properly raised by an interested party.*" *(In re Christian J., supra,* 155 Cal.App.3d at p. 280, italics added.)

The *Christian* court's conclusion is sound. If the erroneous denial of a disqualification motion is not timely raised, otherwise voidable orders become valid and enforceable, and the judgment should not be set aside on appeal as "void."

[4] The court in *Christian J.* addressed the question of whether the nonchallenging party, who failed to join in his opponent's challenge or to assert his own section 170.6 challenge, could nevertheless escape the adverse judgment by contending the challenge deprived the court of jurisdiction to hear the matter, rendering the subsequent proceedings void.

*and which he may avoid, if not.*" ' [Citations.]" (*Id.* at p. 279, citing *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 386, 392 [139 P.2d 930], quoting conc. opn. in *Lindsay-Strathmore Irr. Dist.* v. *Superior Court* (1920) 182 Cal. 315, 338 [187 P. 1056], italics added.)

The twin policies of judicial economy, and elimination of unfair manipulation of erroneously denied challenges, are promoted by section 170.3, subdivision (d): An aggrieved litigant can expeditiously request appellate assistance to secure his right to an impartial judge. If he does not pursue this remedy, however, subsequently entered orders and judgments of the challenged judge remain valid. The twin policies promoted by section 170.3, subdivision (d) are equally compelling whether the challenge is "for cause" or is peremptory. We perceive no reason or basis for allowing these policies to be thwarted by exempting peremptory challenges from the mandatory provisions of section 170.3, subdivision (d).

Accordingly, we conclude that section 170.3, subdivision (d) is the exclusive appellate remedy for any motions to disqualify a judge, including peremptory challenges pursuant to section 170.6.

C. The 10-day Period Commenced When Guedalia Was Notified at the Hearing That His Section 170.6 Challenge Was Denied.

Guedalia contends his petition for mandamus is timely because he never received written notice of the order denying his peremptory challenge. However, we conclude that a formal written notice of the order is unnecessary to trigger the time limitations under section 170.3, subdivision (d), and that the 10-day period commenced on January 26, 1989, when the judge in open court informed Guedalia's counsel that his section 170.6 motion was denied.

Section 170.3, subdivision (d) provides that an aggrieved party must petition for mandamus ". . . sought within 10 days of notice to the parties of the decision . . . ." ██ ██ Nothing in section 170.3, subdivision (d) suggests that the Legislature intended the term "notice" to mean "written notice," and in the absence of some indication to the contrary, we must assume that the Legislature " 'knew what it was saying and meant what it said.' " (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227], quoting *People* v. *Rodriguez* (1963) 222 Cal.App.2d 221, 227 [34 Cal.Rptr. 907].)

Indeed, when the Legislature intends that time constraints for statutorily authorized mandamus be triggered by service of *written* notice, it is entirely capable of expressing that intention.[5] Section 170.3, subdivision (d) is unique (at least among the various Code of Civil Procedure sections expressly authorizing review of interlocutory orders by mandamus) in not requiring *written* notice of the denial of a disqualification motion to start the statutory clock. Instead, it simply provides that the 10-day period starts upon "notice to the parties of the decision."

The fact that other statutes authorizing relief by mandamus specifically provide that the notice must be written, while section 170.3, subdivision (d) omits this qualification, is significant. The omission suggests a legislative intent that section 170.3, subdivision (d)'s 10-day period commences upon actual notice of the decision, regardless of whether formal written notice is served. ■ " 'The fact that a provision of a statute on a given subject is omitted from other statutes relating to a similar subject is indicative of a different legislative intent for each of the statutes. [Citations.] Where a statute with reference to one subject contains a certain vital word, omission of that word from a similar statute on the same subject is significant to show a different intention.' [Citations.]" (*Gonzales & Co.* v. *Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172, 178-179 [198 Cal.Rptr. 479], quoting *Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8 [125 Cal.Rptr. 408]. See also *Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511] [dismissal of action for tax refund for failure to return summons: although section 581a excuses failure if defendant has generally appeared, similar dismissal statute under Revenue and Taxation Code specifically omitted similar provision, showing legislative intent to treat matters differently].)

■ We are unaware of any statutes containing language identical to section 170.3, subdivision (d). However, two courts have construed analo-

---

[5] Our research indicates that there are seven sections of the Code of Civil Procedure which specially provide for review of interlocutory orders by petitions for mandamus, each of which contains certain time limitations for invoking such review. These are: section 400 (review of motion for change of venue – 30-day limitation); section 404.6 (review of motion for coordination of civil actions – 10 days); section 409.4 (review of motion for order expunging lis pendens – 20 days, unless extended by trial court); section 418.10, subdivision (c) (review of motion for order quashing service of process – 10 days, unless extended by trial court); section 437c, subdivision (*l*) (review of motion for order re summary adjudication, or order denying summary judgment – 10 days, unless extended by trial court); and section 877.6, subdivision (e) (review of motion for order to confirm good faith settlement – 20 days, unless extended by trial court). In each case, the Legislature *expressly* provided that the statutory time commences after service of *written* notice. So far as we are aware, section 170.3, subdivision (d) is the only section of the Code of Civil Procedure providing for mandamus review of interlocutory orders which does not expressly specify that service of written notice triggers the statutory period for mandamus review.

gously worded statutes, and concluded that actual notice of the ruling triggers the statutory period. For example, Penal Code section 1538.5, subdivision (i) provides for pretrial review, by mandamus, of an order denying a defendant's motion to suppress evidence, if it is filed "within 30 days after the denial of his or her motion at the special hearing"; there is no requirement of written notice of the order. The court in *Gomes v. Superior Court* (1969) 272 Cal.App.2d 702 [77 Cal.Rptr. 539] held that the statutory period under Penal Code section 1538.5 commenced from oral pronouncement of the ruling, not from the date of the formally entered minute order. Similarly, section 1008, subdivision (a), provides that a motion for reconsideration must be made "within ten (10) days after knowledge of the order . . . ." The court in *In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290 [203 Cal.Rptr. 664] held, in part, that the 10-day period started from the time the party had *actual* notice of the order, not from the date that he received formal written notice of the order.

Thus, both the absence of any requirement that the notice be written and the similarities between the language of section 1008, Penal Code section 1538.5 and section 170.3, subdivision (d), convince us that the 10-day period begins when the party has actual notice of the denial of his disqualification motion. Here, Guedalia had actual notice on January 26, 1989, when the court orally announced to the parties that Guedalia's section 170.6 motion was denied. Guedalia did not file his petition for mandamus "within 10 days of notice . . . of the decision" (§ 170.3, subd. (d)). Accordingly, we conclude Guedalia has waived his right to relief for the alleged erroneous denial of his section 170.6 challenge because he failed to timely seek appellate relief.

2. *Conclusion.*

We hold that section 170.3, subdivision (d) is the exclusive appellate remedy for a party aggrieved by the allegedly erroneous denial of a peremptory challenge under section 170.6, and the failure to file a petition for mandamus within 10 days of actual notice of the court's determination waives any right to relief which might have otherwise pertained.

## DISPOSITION

Writ denied.

Kremer, P. J., and Nares, J., concurred.

Petitioners' application for review by the Supreme Court was denied August 31, 1989.