[No. H008935. Sixth Dist. Oct. 4, 1993.]

In re SHEILA B., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Appellant, v.
GITA B. et al., Defendants and Respondents.

## COUNSEL

Steven M. Woodside, County Counsel, and Maria-Ester De Anda, Deputy County Counsel, for Plantiff and Appellant.

Lori Klein and Ann Jory, under appointments by the Court of Appeal, for Defendants and Respondents.

## OPINION

ELIA, J.—After a contested five-day hearing, the juvenile court declined to take jurisdiction over Sheila B. It therefore ordered the petition alleging Sheila came within the jurisdiction of the juvenile court dismissed. Is this order appealable? We conclude it is. On the merits, we also conclude the juvenile court did not err in failing to assume jurisdiction over Sheila. Since we also conclude an order granting a Code of Civil Procedure section 170.6 motion is not appealable, we will affirm the juvenile court's order.

### Factual and Procedural Background

The necessary facts can be briefly stated. Sheila and her brother Lester[1] were adopted by their paternal grandparents, Areobagita, or Gita, and Lorenzo B., when Sheila was two and a half.[2]

The B. family emigrated from the Philippines to the United States in 1983. Here, they lived in the same house with Gita and Lorenzo's daughter and son-in-law and their four children. Sheila shared a room with her nine-year-old cousin.

The B. family was very protective of the children, who were not allowed to have friends over, not allowed to go out alone, and not allowed to go to friends' houses. Sheila felt constrained by this family ethic.

In March 1991 Sheila, then 10, was in fifth grade. She had been identified as a gifted student, and excelled academically. Sheila made sexual abuse allegations at her school to a child abuse prevention worker. She alleged her grandfather had molested her since she was five and her uncle since she was eight. She was quite specific about what exactly had taken place. She was taken into protective custody, but was released to Gita several days later, after Gita established separate housing from the family. A Welfare and Institutions Code[3] section 300, subdivision (d) petition was filed on April 1. After Lorenzo was arrested on criminal charges in June, however, Sheila wrote a letter recanting her allegations.

The jurisdiction hearing took place over five court days in September, 1991. Sheila testified on several different occasions during this hearing. Her

---

[1] In some documents his name is spelled Lhester. Since we do not know which spelling is correct, we have used Lester throughout.

[2] Since in some documents and testimony respondents are referred to as Sheila's grandparents, and in others as her parents, the terms grandmother and mother, and grandfather and father will be used interchangeably in this opinion.

[3] All further section references are to the Welfare and Institutions Code unless otherwise noted.

testimony was inconsistent and fragmented. Although she remembered making the allegations, she stated she had made them because her parents were overprotective, and she wanted to be with her friends. On another occasion, she stated she was afraid of what would happen if she revealed the molest. Later, she refused to answer any questions about the molestation. In answer to questions by the court, however, she again recanted the allegations, and stated that this was the truth.

Dr. Kerns, director of the Center for Child Protection at the Santa Clara Valley Medical Center, and Mary Ritter, nurse practitioner and the center's clinical coordinator, together evaluated Sheila for physical evidence of sexual abuse. They testified that although there was a dramatic narrowing of Sheila's hymenal rim, which was highly suggestive of prior penetrating trauma, they could not say definitely that Sheila had been sexually abused. Although Sheila was only 11 when they evaluated her, she was physiologically an adolescent, and the profound and somewhat unknown effects of estrogen prevented certainty in their diagnosis. They ruled out the possibility that their findings could have been caused by masturbation or tampon use, however.

At the conclusion of the hearing, the juvenile court allowed the petition to be amended to add a section 300, subdivision (c) allegation.

On September 18, 1991, the juvenile court announced its decision from the bench. It noted that Sheila had recanted her abuse allegations on the stand, and that neither her testimony nor her prior statements balanced against that testimony had persuaded it of the truth of the allegations. It also noted that the medical testimony had not definitely established that molestation had occurred. Based on all the evidence, the court concluded that the allegations of the petition had not been sustained. It then dismissed the petition.

## DISCUSSION

### I. *Code of Civil Procedure Section 170.6 Challenge*

On September 12, 1991, prior to the start of the trial, Lorenzo's attorney made a Code of Civil Procedure[4] section 170.6 motion to disqualify Honorable Leonard Edwards from presiding over the jurisdiction hearing. The juvenile court determined the motion was timely and granted it. Appellant first challenges this decision. We conclude the order granting the motion is not appealable, however.

---

[4]In this section of the opinion, all further section references are to the Code of Civil Procedure unless otherwise noted.

Code of Civil Procedure section 170.3, subdivision (d), provides, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision . . . ." Our Supreme Court in *People* v. *Hull* (1991) 1 Cal.4th 266, 276 [2 Cal.Rptr.2d 526, 820 P.2d 1036] concluded that this statute "prescribes the exclusive means of appellate review of an unsuccessful peremptory challenge motion." (Accord, *People* v. *Broxson* (1991) 228 Cal.App.3d 977, 979 [278 Cal.Rptr. 917].)

The court was asked in *Hull* to determine whether Code of Civil Procedure section 170.3, subdivision (d), applied to section 170.6 challenges as well as to challenges for cause (§ 170.1). Looking at the ordinary meaning of the statute, at related statutes, at the legislative history, and at the policy behind the legislation, the Supreme Court concluded that the term "disqualification of a judge" in section 170.3, subdivision (d), applied equally to peremptory challenges and to challenges for cause. Although *Hull* did not decide whether section 170.3, subdivision (d), was the exclusive remedy for a party aggrieved by the grant of a request for disqualification, we think its analysis equally applicable to this situation.

Code of Civil Procedure section 170.3, subdivision (d), applies to "The determination of the question of the disqualification of a judge . . . ." The plain meaning of this language makes it equally applicable to grants of section 170.6 or 170.1 motions as to denials. This interpretation also serves the policy bases behind the statute, judicial economy and fundamental fairness. (*Hull, supra*, 1 Cal.4th at p. 272.) If this court determined that Lorenzo's section 170.6 motion was untimely and therefore improperly granted, appellant would reap an "intolerable windfall," a second opportunity to win the merits of the case. (1 Cal.4th at p. 273, quoting *Guedalia* v. *Superior Court* (1989) 211 Cal.App.3d 1156, 1162 [260 Cal.Rptr. 99].) This interpretation also eliminates "the waste of time and money which inheres if the litigation is permitted to continue unabated, only to be vacated on appeal because the subsequent rulings and judgment were declared 'void' by virtue of the erroneously denied disqualification motion." (*Guedalia, supra*, at p. 1162.)

■ Appellant argues that it should have the opportunity to raise this issue on appeal. It notes that it filed a writ petition which was summarily denied by this court, and points to *Kowis* v. *Howard* (1992) 3 Cal.4th 888 [12 Cal.Rptr.2d 728, 838 P.2d 250], for the proposition that summary denial of a writ petition does not establish law of the case (*id.* at p. 899). This argument is unavailing.

The juvenile court ordered the dependency petition dismissed on September 18, 1991. Appellant filed a petition for a writ of mandate or supersedeas and a request for a stay on September 26, 1991 (H009116) which did not raise the issue of whether the Code of Civil Procedure section 170.6 motion was properly granted. We summarily denied this petition on November 20, 1991. The juvenile court granted Lorenzo's section 170.6 motion on September 12, however, and no writ petition was filed within 10 days of this order.

In *Hull*, petitioner argued that there would be no satisfactory method of appellate review if mandamus were the only remedy to the denial of a Code of Civil Procedure section 170.6 motion. The Supreme Court responded that the adequacy of the remedy was not at issue. (1 Cal.4th at p. 275.) This is also true here. The Legislature determined in enacting section 170.3, subdivision (d), that an appellate court should have an opportunity to redress an incorrectly decided section 170.1 or 170.6 motion before the issue in the case is decided on the merits. We conclude this section is equally applicable to grants of section 170.6 challenges as to denials. We therefore conclude the order granting Lorenzo's section 170.6 motion is not appealable.

## II. *Appealability of Dismissal Order*

We asked the parties to address whether the order dismissing the dependency petition was appealable. As a threshold issue, therefore, we must determine the appealability of such an order.

The case law provides little guidance on this issue; most of the cases cited by the parties are inapposite. In *In re Elaine E.* (1990) 221 Cal.App.3d 809, 812 [270 Cal.Rptr. 489], an appeal was taken from an order terminating dependency with family court orders at a status review hearing. The appellate court determined this dismissal was appealable. In *In re Tomi C.* (1990) 218 Cal.App.3d 694 [267 Cal.Rptr. 210], the department moved, prior to jurisdiction, to dismiss petitions based on allegations of sexual molest by the father, when custody was transferred to mother. Since the petitions were dismissed without prejudice, the appellate court determined the dismissal was not a final judgment, and hence was nonappealable. And *In re Phoenix B.* (1990) 218 Cal.App.3d 787 [267 Cal.Rptr. 269], a dependency petition was dismissed prior to jurisdiction when father took custody of an alleged dependent child. The appellate court did not discuss the issue of appealability.

Only *In re Christina T.* (1986) 184 Cal.App.3d 630 [229 Cal.Rptr. 247] stands in the same procedural posture as this case. There, the appellate court

reversed a juvenile court's dismissal of a dependency petition. Although it had made a true finding on the petition's sexual molest allegations, the juvenile court expressed concern as to the identity of the molester. Since the juvenile court had made findings consistent with the statutory definitions of section 300, subdivisions (a) and (d), however, the appellate court determined that the trial court had erred as a matter of law in dismissing the petition. (184 Cal.App.3d at p. 640.) It did not discuss the appealability of such an order in the opinion, however.

 Failing guidance from the case law, we return to the Welfare and Institutions Code for guidance. Section 395 provides, in part, that "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . ." California Rules of Court, rule 1435(b), reiterates this language.

 It is well established that, had the court found the allegations of the petition true, the jurisdictional finding would have been nonappealable; the dispositional order is the adjudication of dependency and is the first appealable order in the dependency process. (*In re Candida S.* (1992) 7 Cal.App.4th 1240, 1249 [9 Cal.Rptr.2d 521]; *In re Megan B.* (1991) 235 Cal.App.3d 942, 950 [1 Cal.Rptr.2d 177].)

Where the juvenile court makes true findings in a jurisdiction hearing, dispositional orders are thus the "judgment" specified in section 395, and all subsequent orders, with the exception of those specified in sections 366.25, subdivision (j), and 366.26, subdivision (k), are appealable "orders after judgment." This does not answer our inquiry whether a dismissal of a dependency petition is an appealable order, however.

 Section 395 also states ". . . no such [appealable] order or judgment shall be stayed by the appeal, unless, pending the appeal, suitable provision is made for the maintenance, care, and custody of the person alleged or found to come within the provisions of Section 300 . . . ." Although not determinative, the inclusion of an "alleged" dependent child in this section tends to support appellant's argument that an order dismissing a petition is appealable.

 We next turn to the Code of Civil Procedure. Section 904.1, subdivision (a) allows an appeal to be taken "from a judgment." (*Rao* v. *Campo* (1991) 233 Cal.App.3d 1557, 1568 [285 Cal.Rptr. 691]; *Holt* v. *Booth* (1991) 1 Cal.App.4th 1074, 1081 [2 Cal.Rptr.2d 727].) Code of Civil Procedure section 577 defines a judgment as "the final determination of the

rights of the parties in an action or proceeding." (*In re Tomi C., supra*, 218 Cal.App.3d 694, 698.) "[W]hile there may be numerous orders made throughout a proceeding, there is only one judgment." (*Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602, 1605 [275 Cal.Rptr. 887].) An order of dismissal constitutes a judgment for all purposes and, as such, is generally appealable. (*D'Hondt* v. *Regents of University of California* (1984) 153 Cal.App.3d 723 [200 Cal.Rptr. 628]; cf. Code Civ. Proc., § 581d ["All dismissals ordered by the court . . . shall constitute judgments and be effective for all purposes . . . ."].)

The intent of Code of Civil Procedure section 904.1, subdivision (a), Witkin notes, is "to codify the *final judgment rule*, or rule of *one final judgment* . . . . The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal § 43, pp. 66-67.)

A conclusion that an order dismissing a dependency petition is an appealable order satisfies this underlying principle: Unlike a jurisdiction order, which is followed by an adjudication of dependency and many possible subsequent orders, nothing follows a dismissal order: It is the end of the matter, and the child goes home.[5]

■ An order dismissing a dependency petition is also a final judgment for res judicata purposes where the petition was adjudicated and the decision was rendered on the merits of the claim. "The judgment is on the merits if the substance of the claim is tried and determined . . . ." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 217, p. 655; *Estate of Gump* (1991) 1 Cal.App.4th 582, 608 [2 Cal.Rptr.2d 269].) A judgment "which is rendered after a trial of the issues of fact" is a judgment on the merits. (7 Witkin, *supra*, Judgment, § 218, p. 655.)

■ Here, a contested hearing on the allegations of the petition was heard over five court days, after which the juvenile court rendered a decision concluding those allegations had not been sustained; the resulting order dismissing the petition was thus a judgment on the merits. We thus conclude the dismissal was with prejudice, and was a final judgment for res judicata purposes.

We conclude that an order dismissing a dependency petition, and failing to take jurisdiction, is an appealable order. We reach this conclusion reluctantly, however, for we are cognizant of the pragmatic concerns raised by

[5]Such a conclusion is also consistent with *In re Emily L.* (1989) 212 Cal.App.3d 734 [260 Cal.Rptr. 810] where, on the basis of Code of Civil Procedure section 904.1, we determined that an order denying a termination of parental rights petition (Civ. Code, § 232) was appealable.

Gita. If this court determines that the juvenile court's dismissal of the dependency petition should be reversed, any new jurisdictional hearing would necessarily concern, in addition to these facts, those events which had occurred in the interval since the juvenile court's dismissal. (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1221 [259 Cal.Rptr. 863].) And a year or more will typically elapse from the time the petition is dismissed and the child, allegedly in danger, returned to his or her family, before an appeal is final. This inevitable delay ill serves the interests of a child allegedly in danger from parental abuse or neglect, of the family of such a child, and of the agency charged with ensuring that child's protection.

■ While writ review, at least in principle, has the advantage of speed, it is generally discretionary and courts entertain writs sparingly. (Cal. Civil Writ Practice (Cont.Ed.Bar 2d ed. 1987) § 2.2, p. 50; *People* v. *Superior Court (Brent)* (1992) 2 Cal.App.4th 675, 682 [3 Cal.Rptr.2d 375]; *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 816 [210 Cal.Rptr. 211, 693 P.2d 796]; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) Writ review is not a matter of right, as an appeal is. (Code Civ. Proc., § 906.) And a summary dismissal on a writ petition does not establish law of the case. (*Kowis* v. *Howard, supra,* 3 Cal.4th at p. 899.) Writ review is therefore an inadequate substitute for appellate review.

Having concluded that the order dismissing the dependency petition is appealable, we turn to the merits of appellant's argument.

III. *Standard of Review*

We are asked to determine whether the juvenile court erred in dismissing the dependency petition. We first examine the appropriate standard of review by which to evaluate this determination.

At a jurisdiction hearing, the juvenile court "shall first consider . . . whether the minor is a person described by Section 300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him or her within the jurisdiction of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300." (§ 355.) In dismissing the dependency petition, the juvenile court implicitly found that appellant had failed to meet this burden.

We thus review the juvenile court's conclusion that the evidence presented by the moving party was insufficient to prove its case; that there was

a failure of proof. What standard of review does an appellate court apply in such a case? Appellant suggests that we should examine whether the juvenile court abused its discretion when it dismissed the dependency petition. ██ This is not a discretionary determination, however; a juvenile court has no discretion to dismiss a dependency petition if it concludes the moving party has met its evidentiary burden.

Respondents both urge us to apply the substantial evidence standard to affirm the trier of fact's determination. Applying the semantics of this standard to a failure of proof is problematic, however: Do we review the record to determine if sufficient evidence supports the trier of fact's determination that the evidence was insufficient? (See, e.g., *Heap* v. *General Motors Corp.* (1977) 66 Cal.App.3d 824, 831 [136 Cal.Rptr. 304] ["To find *substantial* evidence in support of a finding of *no* evidence draws the reviewing court into a kind of juridical shell game." (Italics in original.)].)

Appellant argues that, as a matter of law, it was error for the juvenile court to dismiss the petition. As appellant acknowledges, this is but another formulation of the substantial evidence standard. (See, e.g., *In re Christina T.*, *supra*, 184 Cal.App.3d at p. 640 ["the trial court erred as a matter of law."].) The confusion on this issue is illustrated by *Christina T.*, *supra*, the only published case on point, which articulates all three standards of review—abuse of discretion, sufficiency of the evidence, and error as a matter or law—and uses them interchangeably.[6]

██ We agree that the appropriate standard of review is for this court to determine whether the trial court's order was supported by substantial evidence. Substantial evidence is evidence that is "reasonable, credible, and of solid value"; such that a reasonable trier of fact could make such findings. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198].)

It is axiomatic that an appellate court defers to the trier of fact on such determinations, and has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses. (See, e.g., 9 Witkin, Cal. Procedure,

---

[6]This confusion is understandable; Witkin acknowledges the imprecision of the distinction between factual and legal determinations at the appellate level: An appellate court's function, in theory, is to review only errors of law; thus, the lack of substantial evidence in support of a judgment makes it erroneous "as a matter of law"; a determination that an error of law resulted in prejudice involves, however, a review of facts. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 241, at p. 246.)

*supra*, §§ 278-279, pp. 289-292.) "Issues of fact and credibility are questions for the trial court." (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 251 [271 Cal.Rptr. 629]; *In re Heather P.* (1988) 203 Cal.App.3d 1214, 1226 [250 Cal.Rptr. 468], overruled on other grounds, *In re Richard S.* (1991) 54 Cal.3d 857, 864 [2 Cal.Rptr.2d 2, 819 P.2d 843].) It is not an appellate court's function, in short, to redetermine the facts. (9 Witkin, *supra*, Appeal, § 280, p. 292.) ▮▮ Absent indisputable evidence of abuse—evidence no reasonable trier of fact could have rejected—we must therefore affirm the juvenile court's determination.

We proceed to apply this standard of review to the record before us, which includes in excess of 1,200 pages of reporter's transcript. After reviewing the entire record, we have no difficulty concluding that the juvenile court's determination must be upheld. The court explicitly noted in its decision that the medical evidence, while strongly suggestive, was not unequivocal.[7]

The court also weighed Sheila's recantation against her initial allegations, and was persuaded of the truth of her recantation. The testimony of a single witness is sufficient to uphold a judgment (9 Witkin, Cal. Procedure, *supra*, Appeal, § 281, pp. 292-293), and an appellate court may not evaluate that testimony as a basis for reversal. (*Id.* at § 284, p. 295.)

In its decision the juvenile court also noted the traditional values of the B. family, their protectiveness of their children, and the lack of opportunity for the alleged molestation to occur in the B. home. Our review of the record, in short, does not persuade us that there was indisputable evidence of abuse. Absent such evidence, we conclude substantial evidence in the record supports the juvenile court's determination that Sheila did not come within the provisions of section 300, subdivisions (c) and (d). The juvenile court's decision must therefore be upheld, and its order must stand.

### DISPOSITION

The juvenile court's order is affirmed.

Premo, Acting P. J., and Mihara, J., concurred.

---

[7]We reject appellant's argument that the medical evidence set up a presumption, under section 355.1, which shifted the burden of proof to respondents. Since the juvenile court never made the finding required by this section, this presumption never came into play.