184 Cal.App.3d 630 (1986)
229 Cal. Rptr. 247
In re CHRISTINA T., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
EDITH T., Defendant and Appellant.
Docket No. F005137.
Court of Appeals of California, Fifth District.
August 19, 1986.
*631 COUNSEL
Patience Milrod, under appointment by the Court of Appeal, for Defendant and Appellant.
Floyd R.B. Viau and Max E. Robinson, County Counsel, and John F. Duffy, Deputy County Counsel, for Plaintiff and Respondent.
Jeff Reich, under appointment by the Court of Appeal, for Minor.
[Opinion certified for partial publication.[*]]
OPINION
MARTIN, J.
On March 23, 1984, the Fresno County Department of Social Services (DSS) filed a petition in juvenile court alleging (1) minor's father *632 had subjected her to sexual abuse on multiple occasions during the preceding six months and minor had no parent or guardian actually exercising, or capable of exercising, proper and effective care or control (Welf. & Inst. Code, § 300, subd. (a))[1] and (2) minor's home was an unfit place for her due to the depravity of her father (§ 300, subd. (d)). On March 26, 1984, DSS established a prima facie case for detention and the court placed minor in the sole custody of her mother and ordered no contact with the father.
On April 16, 1984, the juvenile court appointed the Fresno County Public Defender to represent minor's mother.
On May 21, 1984, the juvenile court removed the minor from physical custody of her mother and placed minor in a licensed foster home.
On June 18, 1984, the court returned minor to the custody of her mother and ordered the mother not to discuss the case with the minor.
On July 18, 1984, the jurisdictional hearing commenced. Following an in camera hearing, the court declared minor was unavailable as a witness (Evid. Code, § 240).
On November 27, 1984, the juvenile court found both counts of the petition untrue. Minor's mother filed a timely notice of appeal. Minor's father has elected not to become a party or appear in the appeal.

FACTS

Facts from DSS' Social Study[2]
Minor was born on November 8, 1979, in Fresno, California. Minor's mother was a foster child who married at age 16 and gave birth to minor *633 at age 17. Minor's father was a Syrian national whose parents lived in Kuwait. Minor's parents were married in Fresno in 1979 and divorced in April 1982. In February 1983, they entered into a child custody agreement providing for joint custody of the minor. Minor resided in the mother's Fresno home nine days per month and resided in the father's Glendale home for the remainder of the month.
On March 18, 1984, minor's mother contacted the Fresno Police Department regarding a possible child molestation. Fresno Police Officers Sebastian and Rodriguez responded to her home. The mother told officers her daughter lived with her ex-husband in Glendale for all but nine days out of each month. On Thursday, March 15, 1984, she picked up the child and brought her to Fresno. On Saturday, March 17, 1984, minor's babysitter, Beverly Ann Harkman, advised mother the minor had made statements about being forced to take showers with her father. Minor also told the babysitter her father rubbed her between her legs and it hurt. On Sunday, March 18, 1984, the mother questioned minor about the incident and minor repeated the same statements. The mother then called the Fresno Police Department. Ms. Harkman told officers on Saturday, March 17, she and the minor were driving in a car when the minor talked about taking showers with her father. Minor said she did not like the showers but her father "made her." Minor also told the babysitter her father rubbed her between her legs until it hurt. When the babysitter asked minor if the father did anything else, the minor became very embarrassed and stated, "He touches me here," and pointed to her buttock. Minor also said she slept with her father in the same bed.
Minor was very hesitant to talk to the officers about the incident. She told them she had to take showers with her father although she did not want to do so. She also said while she and her father were in the shower, he would rub her between the legs until it hurt. Minor also said father would hit her hard when she did something wrong. When officers asked minor if the father did anything else, she answered, "Yes, but I don't want to tell." Mother indicated to officers minor did not appear to have any bruises or injuries. However, mother told officers she was going to take the child to her own doctor on March 19 for further examination. The officers advised mother to call Fresno County Child Protective Services for further followup and mother agreed to do so.
On March 20, 1984, Fresno Police Detective D. Krug conducted a followup interview with minor. Minor told Detective Krug when she watched television at her father's residence, "Daddy Kris" called her into the bathroom. Minor's father told her to take her clothes off and get into the shower. Minor complied with her father's request but did not want to do so. Minor *634 told Detective Krug "Daddy Kris" touched her genital area and buttocks with his hand and inserted his finger into her body. Minor's mother told Detective Krug minor had a vaginal discharge but no visible injury.
On March 21, 1984, said minor was examined by John J. McCann, M.D., a resident in pediatric medicine at Valley Medical Center. Dr. McCann had performed examinations on many child sexual abuse victims. Dr. McCann found said minor's hymen was not intact, both her vagina and anus were dilated (approximately 1/2 to 5/8 inch for the vagina; approximately 3/4 to 7/8 inch for the anus), and this condition was consistent with said minor having been molested and having those areas penetrated by fingers. In a telephone conversation, Dr. McCann was asked if the molestation would have occurred recently or more than a few months ago. In Dr. McCann's opinion, it was probable the molestation was recent.
On May 3, 1984, minor's mother again contacted the Fresno Police Department regarding a possible child molestation. Police Officers Sebastian and Keeney responded to the mother's apartment. The mother told officers on Tuesday, April 25, 1984, she and the minor went to a therapy session at "Adva-Care." Therapist Shelia T. Chapital, a psychiatric social worker, showed minor a male doll and a female doll. Minor pulled down the pants of the male doll and placed the female doll's face between the male doll's legs. Minor then stated, "That's what little girls do." When minor's mother questioned her further, minor replied, "That's what daddy Peter [mother's cohabitant/boyfriend] has me do." Mother later asked minor whether she had ever done anything like that before with Peter and minor replied, "No." Mother then asked minor why she made the previous statement. Minor said, "I was making up stories, I meant to change the name to Chris." "Krisafour" was the name of minor's father and the mother's ex-husband. The mother advised Fresno County Child Protective Services of this incident and the latter required a police department report since it was the second incident of possible molestation of the minor.

Facts from the Jurisdictional Hearing
Following an in camera proceeding, the court ruled minor unavailable as a witness at the contested jurisdictional hearing. (Evid. Code, § 240.) Shelia T. Chapital, a psychiatric social worker at Fresno County Department of Mental Health, testified she counseled minor beginning March 1984. Chapital testified minor "told me that her daddy rubbed her, and that he hurt her ... and this was in the shower." Minor also told Chapital, "My Daddy Kris rubbed me and hurt me." Minor said "Daddy Kris" would wash her, rub her really hard, hurt her and she would scream. Minor told Chapital on one occasion she was going to sleep on the sofa when "Daddy Kris" picked *635 her up and said, "Let's go take a shower." When minor refused to comply, "Daddy Kris" spanked her, made her cry, and sent her to her room. Minor also told the therapist "Daddy Kris" had "put his finger in her front part and in her back part." Minor identified the vagina as the "front part" and the anus as the "back part." When Chapital asked minor how many times "Daddy Kris" did this, minor held up 10 fingers.
The parties stipulated Dr. John J. McCann was a medical expert in the examination of sexually abused children. Dr. McCann examined minor on March 21, 1984, and concluded she had been the victim of sexual abuse. Dr. McCann testified minor had an abnormally large vaginal opening, an absent hymen, and a dilated anus. All of these physical findings were compatible with a child who had been sexually molested. The finding of the dilated anus was consistent with repeated penetration.
Beverly Ann Harkman testified she babysat minor on March 15, 1984. Ms. Harkman overheard minor tell her son the minor showered with her father. Ms. Harkman suggested minor tell her father she can shower herself. Minor responded, "I tell him that I have already had a shower, and I don't want to but he makes me." At Ms. Harkman's request, minor explained how her father bathed her and concluded, "And it is so bad." Ms. Harkman had a second conversation with minor to determine whether she had been sexually abused. Ms. Harkman testified, "I wanted to get further information to rule out the possibility of whether this was a normal shower or an unusual shower." Minor told Ms. Harkman her father touched her genital area when they showered together. After further questioning, minor told Ms. Harkman she did not want to stay with her father and she was afraid of her father. Ms. Harkman contacted the Fresno Police Department after the second conversation.
Minor's father testified he bathed his daughter in the bathtub between June 1983 and March 1984. During that period he would occasionally shower with minor because "she couldn't take care of herself by herself. I mean, she couldn't do it by herself." Minor never objected to taking a bath by herself or a shower with her father. When father took showers with minor, he only touched her for the purpose of cleaning her. When minor was three and a half years old, she looked at her father "in a funny way," while they were in the shower together. Father testified, "... since that day, it has been about  maybe three times I showered with her. Never without my clothes. Never showered with her again." Father denied molesting minor. He indicated minor wanted to live with her mother rather than with him because minor's mother was more permissive with regard to meals, sleep, television, and play.
*636 At the conclusion of the jurisdictional hearing, the court found the allegations of the petition untrue, stating: "In the Court's mind a terrible and tragic thing has happened to this little girl. There is no question that she has been sexually molested by somebody. And that alone regardless of who did it to her, it is enough to substantially injure this girl for life unless tremendous care and concern is given by everybody that has anything to do with her.
"The question is, of course, the main question before the Court is who did it. And particularly was it [father].
"There is abundant evidence before me without even going outside of the Court's Exhibit Number 1 [DSS report] that [father] was the one who sexually molested her. She is very  the girl in her statements is very particular as to where and when and under what conditions it happened exactly. And yet, this case from the very beginning has been subject to a terrible problem.
"In order to identify [father] as the sexual molester, the only  he certainly had access, but he was not entirely alone in that access.
"The essential evidence is that supplied by the Court. And the essential evidence comes not from the girl herself, but through hearsay. And that comes because that little girl is not eligible to testify. And it is not the type of hearsay evidence which the Court readily accepts.
"Such as spontaneous exclamations and the like. And that is  it is incumbent upon the Court to view such hearsay evidence with the greatest of caution.
"One of the things the Court must always consider, has this little girl had time to reflect and make up possibly a false accusation? And that is the defect in this case from the beginning. The answer is yes.
"I look at the report here. Advocare [sic] therapist going through the play acting, that's what hit. Daddy Peter asked me to do. Then she says, `I was making up stories. That's really what Chris [sic] did.'
"Recalling the testimony of Mrs. Chapital where the little girl who Chrissy asked Peter doll copulate with Chrissy Lynne doll? Who is Chrissy Lynne? We don't know who Chrissy Lynne is. `It is somebody else,' she says.
"And then Peter pulled the pants down and made Chrissy do this to him.
"Mother doll made Edie do the same thing to Peter. Confusing, isn't it?
*637 "Chrissy Lynne doll, was that you? No, it was my friend.
"When are we to believe her? With a case of this incredible seriousness and the consequences, I think that Mr. Sciandra [father's counsel] has come right to the problem in the case that makes this little girl's testimony inherently unreliable.
"When you get  when we have to rely on her and her only  and she accuses others, you have got a problem. Therefore, I find the allegations in this petition not to have been proved beyond by preponderance of evidence. I find them both untrue."

DISCUSSION

I. DID THE JUVENILE COURT ABUSE ITS DISCRETION BY LIMITING THE PARTICIPATION OF THE MOTHER'S ATTORNEY IN THE PROCEEDINGS?[*]
.... .... .... .... .... .... .

II. DID THE JUVENILE COURT ABUSE ITS DISCRETION IN DISMISSING THE PETITION?
Minor's mother and DSS contend the juvenile court abused its discretion in dismissing the dependency petition.
Minor's mother and DSS do not expressly attack the sufficiency of the evidence to support the juvenile court's ruling. Rather, they contend: (1) the court found minor was sexually abused by a third party; (2) this finding activated statutory presumptions that minor was in need of proper and effective parental care (§ 355.1), that she had been neglected (§ 355.2), and that her home was an unfit place for her by reason of physical abuse (§ 355.4); (3) activation of these presumptions created a prima facie case for dependency and shifted the burden of producing evidence to the parents (§ 355.6); (4) during the contested jurisdictional hearing, each of minor's parents unsuccessfully attempted to establish the abuse occurred in the home of the other parent; and (5) because neither parent overcame the presumptions *638 by a preponderance of the evidence, the court abused its discretion in dismissing the petition.[3]
(1) A dependency hearing conducted under section 300 involves two distinct issues to be addressed by the juvenile court. First, at the jurisdictional hearing, the court must decide whether the minor comes within one of the categories specified in section 300. (§ 355.) If the court decides this issue in the affirmative, the court may invoke its jurisdiction to declare the minor a dependent child of the court. Second, at the dispositional hearing, the court must decide the appropriate disposition of the minor. (§§ 356, 358.) The court will hear evidence to determine disposition, which may range from supervised custody (§ 362) to removal of the child from the home. (§ 361.) The court's principal concern is a disposition consistent with the best interests of the minor. (Collins v. Superior Court (1977) 74 Cal. App.3d 47, 52 [141 Cal. Rptr. 273].)
At the dispositional hearing, proof by a preponderance of evidence is sufficient unless the court awards custody to a nonparent. (Evid. Code, § 115.) The more stringent standard of proof by clear and convincing evidence only applies if a child is removed from his or her home and custody is awarded to a nonparent. (§ 361, subd. (b); Civ. Code, § 4600.) After hearing the evidence, the court must make a finding, noted in the minutes of the court, whether or not the minor is a person described by section 300. If it finds the minor is not such a person, it must order the petition dismissed and the minor discharged from any detention or restriction previously ordered. (§ 356.)
(2) On appeal from a juvenile court order in a dependency hearing, an appellate court's review of the sufficiency of the evidence to support the *639 judgment is limited to whether the judgment is supported by substantial evidence. Issues of fact and credibility are questions for the trial court and not the reviewing court. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact. The role of the reviewing court is not to reverse judgments where they may have been based in part on excludable evidence. Rather, the duty of the reviewing court is to strip away the inadmissible evidence and ask whether enough admissible evidence remains to sustain the court's finding. (In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1132-1133 [200 Cal. Rptr. 789].)
We will find the trial court did err in dismissing the dependency petition and the judgment must be reversed and remanded for further dispositional proceedings.
The petition alleged the minor came within the provisions of section 300, subdivisions (a) and (d) and should be adjudged a dependent child of the court. Section 300 provides in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:
"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent or guardian actually exercising care or control.
".... .... .... .... .... .... .
"(d) Whose home is an unfit place for him or her by reason of neglect, cruelty, depravity, or physical abuse of either of his or her parents, or of his or her guardian or other person in whose custody or care he or she is."
The trial court found the petition untrue, stating: "In the Court's mind a terrible and tragic thing has happened to this little girl. There is no question that she has been sexually molested by somebody. And that alone regardless of who did it to her, it is enough to substantially injure this girl for life unless tremendous care and concern is given by everybody that has anything to do with her.
"The question is, of course, the main question before the Court is who did it. And particularly was it [father]." The court then proceeded to analyze and weigh the evidence not of whether the minor was molested (this the *640 court conceded) but, rather, whether the molester was the father, the boyfriend, both of them, or possibly some unidentified person. The court concluded the evidence was insufficient to prove the identity of the culprit and, therefore, found the allegations untrue and dismissed the petition. In our view, the trial court erred as a matter of law.
The trial court was presented with two basic questions by the allegations in the petition. First, was the minor a person who came within the definition of section 300, subdivision (a) and/or subdivision (d) and, thus, should be adjudged a dependent child of the court? Second, if the minor was such a person, what disposition was in the best interest of the dependent child? As previously stated, the juvenile court judge concluded "a terrible and tragic thing has happened to this little girl. There is no question that she has been sexually molested by somebody." (Italics added.) (3) Thereafter, the court never equivocated about, modified or revised this conclusion. Rather, the court only addressed the further question of who was the molester. The court therefore clearly found the minor to be one who is in need of proper and effective parental care or control and has no parent willing to exercise or capable of exercising or actually exercising care or control (§ 300, subd. (a)), and the minor's home is an unfit place for her by reason of neglect, cruelty, depravity or physical abuse of either of her parents. (§ 300, subd. (d).) In other words, the court found by definition of law the minor was a person who came within the provisions of section 300. However, it appears the trial court mistakenly believed it must also find, or be able to find from the evidence, who specifically was sexually abusing the child, before it could find the allegations of the petition to be true. We cannot agree. The only significance in this proceeding (as opposed to a criminal proceeding, for example) as to who was in fact sexually abusing Christina, was the help and guidance this fact would lend to the court in fashioning an appropriate order in the best interest of the dependent child, i.e., whether the child should be removed from the home of one or the other or both of the parents, placed in a foster home, what access to the child or visitation should be allowed, the scope of DSS supervision, and the like.
We conclude the trial court erred as a matter of law in dismissing the petition and, as we have stated, the matter is remanded for further dispositional proceedings in the lower court.

III.-VI.[*]
.... .... .... .... .... .... .
*641 The judgment is reversed.
Franson, Acting P.J., and Ballantyne, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III-VI.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] "Prior to the jurisdictional hearing, the social worker generally prepares an extensive report called the social study.

"The social study report typically contains hearsay. Nevertheless, California Rules of Court, rule 1365(d) specifically permits admission of the social study, or other report of the social worker containing relevant and material information, to be admitted in evidence at the jurisdictional hearing on condition that, if requested by the parent or guardian, the social worker is made available for cross-examination regarding the contents of the report. In addition, W & I C section 281 specifically authorizes the trial court to receive and consider the reports and recommendations of the social worker in any matter involving the custody, status, or welfare of a child.
"Thus, although it contains hearsay, the social study has routinely been admitted in evidence at the jurisdictional hearing, and read and considered by the court prior to making its jurisdictional finding. [Citations omitted.]" (Cal. Family Law Service (1986) Juvenile Court Dependency Proceedings, § 59:59, pp. 224-225.)
[*] See footnote, ante, page 630.
[3] The Welfare and Institutions Code contains four presumptions available to the petitioner at a jurisdictional hearing to ease the burden of proving a prima facie case. (§§ 355.1-355.4.) Section 355.1 creates a presumption as to the child's need of proper and effective parental care. Section 355.2 creates a presumption the child's home is unfit by virtue of neglect. Section 355.3 creates a presumption the child's home is unfit by virtue of cruelty. Section 355.4 creates a presumption the child's home is unfit by virtue of physical abuse. These presumptions arise on the finding, based on competent evidence, the child has sustained an injury or detrimental condition that would not ordinarily be sustained except as the result of unreasonable or neglectful acts or omissions by either parent, a guardian, or another person having care and custody of the child. Such evidence is prima facie evidence the child is described by section 300, subdivision (a) or by subdivision (d). As such, the evidence is sufficient to support a finding the juvenile court has jurisdiction over the child. The presumptions are rebuttable and affect only the burden of producing evidence. (§ 355.6.) If the parent or guardian presents rebuttal evidence as to how the injury actually occurred or as to the fitness of the child's home, the presumptions have no further effect. Thus, the court must make specific factual findings as to the cause of the injury and the fitness of the home when rebuttal evidence has been presented. (Cal. Family Law Service, supra, Juvenile Court Dependency Proceedings, § 59:54, pp. 220-221; In re James B. (1985) 166 Cal. App.3d 934, 937-938 [212 Cal. Rptr. 778].)