IN THE INTEREST OF Z.M.
No. 29299.
Intermediate Court of Appeals of Hawaii.
April 29, 2009.
On the briefs:
Herbert Y. Hamada, for Mother-Appellant.
Mary Anne Magnier and Eric J. Alabanza, Deputy Attorneys General, for Department of Human Services-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., NAKAMURA and LEONARD, JJ.
Mother-Appellant (Mother) appeals from the July 29, 2008 Orders Concerning Child Protective Act filed in the Family Court of the First Circuit (family court) that awarded Petitioner-Appellee State of Hawaii, Department of Human Services (DHS), foster custody of her son (Child).[1]
Mother's sole point of error on appeal is that the lack of an identified perpetrator of harm to Child precluded the family court from granting foster custody to DHS. Specifically, Mother argues that "[b]ecause the [family] court found no identified perpetrator of harm to [Child] the [family] court could not find that either [Mother] or [F]ather harmed or threatened to harm [Child]."
After a careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's point of error as follows:
The family court did not clearly err in concluding that the Child's "physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of Mother and Father under [Hawaii Revised Statutes (HRS)] Section 587-63(b)(1)." See September 10, 2008 Findings of Fact and Conclusions of Law (FsOF/CsOL), COL 6; cf. In re Doe, 95 Hawai`i 183, 190, 20 P.3d 616, 623 (2001) (family court's determinations under HRS § 587-73 (a) present mixed questions of law and fact and are accordingly reviewed on appeal for clear error).
The family court found in its FsOF[2] that Mother and Father were the primary caretakers of Child; that Father[3] brought Child to the emergency room at Pali Momi Medical Center on March 3, 2008 due to fever, congestion and shaking, and Child was taken by ambulance to Kapiolani Medical Center for Women and Children (KMCWC) after suffering seizures at Pali Momi; that "CT and MRI exams indicated damage to the Child's brain"; that x-rays and a skeletal survey conducted on March 12 and 13, 2008 revealed that Child had four fractured left ribs, a fractured right rib and a fracture of the right clavicle;[4] that the right rib injury appeared to have occurred at a different time from the other fractures, although "[t]he majority of these rib fractures... occurred 10 to 14 days before the skeletal survey on March 13, 2008, i.e., on or about March 3, 2008"; and that the fractures and brain damage "would require a forceful event to have occurred; these were non-accidental injuries."
Mother and Father testified that Child was with a babysitter on March 3, 2008, but both Mother and Father testified that they did not believe that the babysitter had caused the injuries. Rather, they testified that they believed the injuries had been caused by hospital staff, and Mother also suggested that the clavicle could have been broken during childbirth. However, Dr. Lillian Fujimoto, Child's primary care physician, was called by Mother as a witness and testified that she did not believe that Child's fractures occurred following his hospitalization, and that she did not believe the clavicle had been broken during birth.
The family court found that although "[t]here is no identified perpetrator to the Child's serious, life-threatening injuries," neither Mother nor Father had been ruled out as either perpetrators of the harm or perpetrators as not being protective. It further found that "[t]here has been no adequate explanation by Mother or Father" for how Child suffered the injuries, and that the testimony of Mother and Father was not credible.
The family court also found that Father had a history of assaultive behavior, including convictions for Abuse of a Family Member and Assault. It also found that Mother had a history of mental health problems including Intermittent Explosive Disorder, a Probable Bipolar II Disorder, and a Personality Disorder Not Otherwise Specified with antisocial features. The court further found Mother had come to the attention of CPS in March, 2004, when Child's half-sibling was threatened by Mother and half-sibling's father. Custody of half sibling was subsequently awarded to the half-sibling's father in 2007 after Mother hit a maternal uncle with a metal battalion and kicked and punched maternal grandfather, and then failed to continue with parenting classes and was not compliant with recommendations for a psychological evaluation.
Thus, the family court concluded that "[g]iven Mother's mental health condition and lack of psychological and psychiatric intervention, history of poor parenting skills, history of confirmed Child maltreatment with the half-sibling without following through with services, and not having been ruled out as the perpetrator of Child's harm, she is unable to adequately care for the Child."
The family court did not err in reaching that conclusion. Depending on the circumstances of the alleged abuse, the family court can take action to protect a child even if the identity of the perpetrator has not been determined. See In re Jeffrey R.L., 435 S.E.2d 162, 173 (W.Va. 1993) (terminating parental rights when infant child was severely injured while in custody of parents and identity of perpetrator could not be determined); In re Christina T., 184 Cal. App. 3d 630, 640 (1986) (reversing trial court's dismissal of dependency petition when child had been subject to sexual abuse, although the identity of the perpetrator had not been determined).
The circumstances of Child's injuries and the implausibility of Mother's and Father's explanation for them, together with Mother's mental health issues, prior threatening conduct toward Child's half-sibling and lack of compliance with services in that prior case, and Father's history of assaultive behavior, all support the inference that Child's physical and psychological welfare had been harmed or was subjected to threatened harm by the acts or omissions of Child's family. HRS § 587-63(b)(1). The identity of the perpetrator is one of a number of factors which the family court must consider under the safe family home guidelines, id.; HRS § 587-25, and we cannot say that the family court clearly erred in its consideration of those factors at this stage of the proceeding.
Accordingly, the July 29, 2008 Orders Concerning Child Protective Act entered in the Family Court of the First Circuit are hereby affirmed.
NOTES
[1] The Honorable Jennifer L. Ching presided.
[2] Mother does not challenge any of the family court's FsOF, and accordingly, they are binding for purposes of this appeal. Poe v. Hawaii Labor Relations Bd., 97 Hawai`i 528, 536, 40 P.3d 930, 938 (2002).
[3] Although the court found that Child was taken to the hospital by Father, Mother and Father testified that they both took Child to the hospital.
[4] Father testified that Child was hospitalized at KMCWC after being transferred there on March 3 through the taking of the x-rays on or about March 13.