Filed 9/24/20  In re Tanner F. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re TANNER F. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAMANTHA F. et al.,<br><br>Defendants and Appellants. | F080366<br><br>(Super. Ct. Nos. JVDP-19-000062, JVDP-19-000063)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Gorman Law Office and Seth F. Gorman for Defendants and Appellants.

Thomas E. Boze, County Counsel, and Angela J. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Nine-month-old Hudson F. sustained skull fractures consistent with nonaccidental trauma.  In the window of time the fractures were opined to have occurred, Hudson had

been in the care of his parents, Samantha F. (mother) and Matthew F. (father) (collectively, "parents"); daycare providers; maternal grandmother; and other family members. Medical testimony established that none of the explanations the parents, the daycare providers, or the grandmother gave could have explained the fractures. The juvenile court took dependency jurisdiction over Hudson and his two-year-old brother, Tanner F., finding they were described by Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[1] The children were placed with the parents on family maintenance under strict supervision and were ordered not to be alone with the children at any time. The parents appeal the jurisdictional order, arguing the juvenile court's findings pursuant to section 300, subdivisions (a) and (b)(1) were not supported by sufficient evidence. We agree in part. For the reasons set forth in this opinion, we reverse the jurisdictional order in part as to section 300, subdivision (a). In all other respects, we affirm the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 2019,[2] the parents brought Hudson to the hospital after noticing a soft area on the right side of his head. Hudson appeared "playful" and in "no distress" when he arrived at the hospital. X-rays and a CT scan were administered, and Hudson was diagnosed with a right parietal depressed skull fracture and a left parietal linear skull fracture. Based on the injuries, child abuse was suspected and a referral was made to the Stanislaus County Community Services Agency (agency). No visible injuries were noted except by one doctor, who noticed a fading bruise on Hudson's back.

The parents reported to law enforcement and an agency social worker that they believed two possible incidents may have caused the fractures. The first occurred when

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] All further references to dates are to dates in 2019.

2.

Tanner was playing on the parents' bed while Hudson played on the floor. Tanner fell off the bed, which is approximately two to three feet high, and landed on Hudson.[3] The second occurred the previous day, on March 8, when Hudson was holding onto an end table, lost his balance, and fell backwards hitting his head on the tile. He cried for a few minutes and resumed play as normal.

Law enforcement and the social worker visited Tanner at the family's home where he was being watched by relatives and he appeared to be clean and healthy with no visible bruises. The social worker had no safety concerns about the home.

Hudson and Tanner were cared for by a licensed daycare provider Monday through Friday from 8:00 a.m. to 4:00 p.m. The daycare provider reported that on March 5, Hudson was pushing a walking assist toy and fell backwards onto the carpet.

A doctor at the hospital requested a consultation with child abuse specialist Catherine Albin, M.D. Albin reported concerns of nonaccidental trauma and opined it was unlikely the incidents reported would have caused the fractures.

The agency deemed the allegations of physical abuse against both parents substantiated. Both children were taken into protective custody.

The agency filed a petition on behalf of Tanner and Hudson, alleging Hudson came within the jurisdiction of the juvenile court under section 300, subdivisions (a) [serious physical harm], (b)(1) [failure to protect], and (e) [severe physical abuse upon a child under five years of age] and that Tanner came within the jurisdiction of the juvenile court under section 300, subdivisions (b)(1) and (j) [abuse of sibling].[4] Specifically,

---

[3] Mother reported to law enforcement and both parents testified this incident took place on the morning of March 9. Father, however, reported to the social worker this incident occurred on March 7 at around 8:00 p.m. and reported to the police the incident took place on March 8.

[4] The agency alleged the same supporting facts under each subdivision of section 300 [we have amended or omitted facts that were later amended or stricken by the juvenile court]:

under section 300, subdivision (b)(1), it was alleged the children had suffered, or there was a substantial risk the children would suffer, serious physical harm or illness as a result of (1) the failure or inability of his or her parent to supervise or protect the children adequately and (2) the willful or negligent failure of the children's parent to supervise or protect the children adequately from the conduct of the custodian with whom the children had been left.

The parents were teachers, with no previous child welfare or criminal history. Despite Albin's diagnosis of nonaccidental trauma, the parents maintained that no one caused the injuries.

---

1. "On March 9, 2019, the Stanislaus Community Services Agency received a referral stating that 9-month old, Hudson, has skull fractures and does not walk. Mandated Reporting Party reported concern of child abuse due to fractures. Minor has a right side depressed skull fracture and per doctor this type of fracture is caused by force. Minor has a left linear skull fracture. Both fractures are located on the parietal side. Minor has a right side hematoma. No other marks or bruises were observed. Minor is being admitted to the hospital."

2. "On March 11, 2019, the minor, Hudson … was found to have bilateral skull fractures caused by nonaccidental trauma. Hudson has a mildly depressed right parietal skull fracture, nondisplaced hairline fracture at the left parietal skull, and a thin right parietal scalp hematoma. There was an area of bogginess to the right occipital scalp. He was reported by one of the doctors to have had a fading light green bruise."

3. "The parents … provided multiple explanation for Hudson's injuries; however, none of the explanations can explain the bilateral skull fractures. The presence of a depressed skull fracture is suggestive of greater force than described in the parents' explanations. Further, the parents' accounts of the injuries do not explain the contralateral symmetric fracture to the left side of the skull."

4. "Child Abuse Expert, Catherine Albin, reported that the presence of Hudson's bilateral fractures are distinctly associated with nonaccidental trauma and that Hudson's injuries are consistent with a right handed blow to the left side of his head and deceleration impact to the right side of his head. Dr. Albin reports that the diagnosis is nonaccidental trauma."

The children were ordered detained from the parents and a contested jurisdictional and dispositional hearing was set. The children were placed with paternal relatives and supervised visitation was ordered.

At the jurisdictional hearing, Albin testified that Hudson's fractures were acute, or new, meaning they had not shown signs of healing and likely occurred within a few days or a week of his going to the hospital. Albin said the fractures were consistent with a nonaccidental injury, especially in the sense there was no mechanism of injury reported that adequately explained the injury. The depressed nature of the fractures indicated an impact by a blunt object, which could be anything from a baseball bat, a toy, or the corner of a piece of furniture.

Albin stated none of the incidents reported explained the depressed nature of the fractures. She further explained the falls reported by the daycare providers and the parents that Hudson stood up, lost his balance, and fell backwards did not explain the injuries because the fractures were parietal, on the side, and not occipital, or in the back of the head. Nor would they have made the amount of force needed to cause the fractures. Albin testified the incident where Tanner fell on top of Hudson would not explain the fractures because there would not have been enough velocity to cause the fractures.

Albin testified that commonly, after children receive fractures such as these, they are more difficult to console than normal. Several hours after receiving the fractures, however, it is possible that Hudson would have appeared normal, and it is possible a parent could overlook symptoms or not be aware of them if they had occurred outside the home. Albin said Hudson's fractures were not ones associated with neurologic injury or long-term damage; she said Hudson's fractures healed and that she understood he was doing "extremely well." She explained, however, that without knowing how the fractures occurred, it cannot be assured Hudson will be safe from reoccurrence. While Albin opined it could be possible there was an accidental mechanism for the fractures, in the

5.

absence of a plausible explanation, it is more likely than not related to nonaccidental trauma.

William McCullough, a Board Certified Pediatric Radiologist, testified Hudson suffered a depressed fracture in the right parietal bone and one nondepressed in the left parietal bone. He testified there was no evidence of healing in either fracture at the time the scans were taken. He explained that a depressed fracture suggests it was caused by a sharp or angular object like a piece of furniture or sharp corner on a stair rather than blunt force. He testified he had rarely seen a bilateral parietal fracture in a child of Hudson's age, and when he had seen it in the past, it was caused by abuse.

James Crawford-Jakubiak, a Board Certified General and Child Abuse Pediatrician, testified on behalf of mother. He testified skull fractures in children are not common. The fractures sustained by Hudson could have been an accident, but it was not likely the fractures were caused by Hudson falling backward onto the tile as described. Crawford-Jakubiak said he did not think "the trivial stuff [the parents are] describing hurt their baby. They may believe maybe it did. I don't." Crawford-Jakubiak did not have enough information to render an opinion on the incident of Tanner falling onto Hudson. Crawford-Jakubiak testified he could not determine whether the injuries were accidental or abusive, and noted, "I could tell you something happened. Somebody knows something." Crawford-Jakubiak explained the injury sustained by Hudson would have been the "scariest and most painful thing he experienced his whole life and he would have responded accordingly." One witnessing the injury would have known he was hurt.

Father testified he did not harm Hudson and did not believe anyone else who took care of Hudson harmed him. He "absolutely" believed Hudson sustained the fractures accidentally. He testified he was "absolutely not" convinced by Albin's testimony, but did not have medical training on which to base his opinion. When asked whether it concerned him that there's no clear explanation as to how the fractures happened, father responded, "Does it concern me? Well, I think our explanations are what happened."

Father offered an additional third explanation during his testimony: that on March 1, when Hudson's maternal grandmother was watching him, he fell backwards onto tile. Father said grandmother reported he cried "for a little bit" but "seemed ok."

Mother testified that Hudson was injured "by accident. 100 percent." Mother testified she believed Hudson sustained the injuries by the two reports of his falling backward onto tile and the report of Tanner falling on Hudson. Mother explained with regard to the falling incident, she was in the en suite bathroom of her bedroom getting ready while the boys were in the bedroom. She heard crying and went to check on the children, and Tanner told her he had fallen on Hudson. Hudson was easily consoled after Tanner fell on him. Mother testified she did not harm Hudson and did not believe anyone else who cared for him harmed him.

Following the testimony, both the agency and counsel for minors requested the court find the allegations in the petition true.

The juvenile court struck the section 300, subdivision (e) allegation because it found there was insufficient evidence to show the parents "knew or reasonably should have known" that Hudson was being physically abused based on the medical testimony that his injuries would not have been obvious.

The court expressed worry that the parents said no one could have intentionally hurt Hudson. The court stated there was "no logical explanation for how these injuries were sustained" and agreed with Albin's opinion that "it's more likely than not that the injury was nonaccidental because of the totality of the circumstances." The court explained:

> "I am not by any means saying I believe a hundred percent that the parents
> caused this injury, but what I am saying is I believe this injury is
> nonaccidental and that it happened while the child was in the parents' care
> and control, and if it wasn't the parents that created this injury, than it was
> by somebody else. That's what I find concerning because this is a very
> small child. These kind of injuries don't normally occur to very small
> children. That's my concern."

7.

The court amended the section 300, subdivision (a) allegation to apply to both children and sustained it as to both children. The court sustained the section 300, subdivision (a) allegation "based on the fact that there was serious physical harm that was inflicted non-accidentally by someone." The court continued: "Again, I don't know who. Again, I'm not saying it was the parents. I'm not saying it wasn't the parents, but the Court is going to find it is nonaccidental injury."

The court sustained the section 300, subdivision (b) allegations. The court struck the section 300, subdivision (j) allegations because it found that both children were described by section 300, subdivisions (a) and (b).

As to disposition, there was a stipulated resolution among the court and the parties. The court found no substantial risk of detriment if the children were to be returned, and the court ordered the children returned to the care of the parents with family maintenance services under the court's supervision. The court ordered the parents needed to live with the children either in their home with an approved supervisor present or the parents would move into the home where the children were currently living with the care providers. The court explained the supervision was to be "strict" meaning the parents were not to be left alone with the children at any time.

The parents jointly appealed.

## DISCUSSION

### I. Section 300, Subdivision (b)

We begin with the parents' contention the evidence was insufficient to support jurisdiction under section 300, subdivision (b)(1).

A child comes within the court's jurisdiction under section 300, subdivision (b)(1) when, as relevant here, he or she "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."

8.

We review the juvenile court's jurisdictional findings using the substantial evidence standard of review, where we determine whether evidence of reasonable, credible, and solid value supports the juvenile court's findings. We do not reweigh the evidence, nor do we consider matters of credibility. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199–200.) " '[W]e must uphold the [trial] court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings.' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

The parents argue the evidence was insufficient to support a conclusion that the children were at substantial risk of suffering serious physical harm in the future or that the parents abused or neglected Hudson, and, accordingly, there was not a basis for the juvenile court to make findings under section 300, subdivision (b). We disagree.

*In re A.S.* (2011) 202 Cal.App.4th 237, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 (*A.S.*), is on point. In *A.S.*, the parents left the child in the care of relatives. (*Id.* at p. 240.) One of the relatives took the child to the hospital because she became limp, pale, and nonresponsive; she was diagnosed with a subdural hematoma and bilateral retinal hemorrhages. (*Ibid.*) The parents told the attending physician that the child was healthy when they left her with the relatives and were unaware of any traumatic event. (*Ibid.*) The parents explained one of the relatives had told them he had walked away from the child and the child began to choke; the relative returned, finding the child limp. (*Ibid.*) The child welfare agency took the child into protective custody and filed a petition on the child's behalf under section 300, subdivision (b). (*A.S.*, at p. 240.) The medical expert advised the injury was consistent with being shaken or slammed to a soft surface and opined the injury was nonaccidental because the caretakers had no explanation. (*Id.* at p. 241.) The injury could have been as old as one week. (*Ibid.*) The court sustained the petition and

removed the child from the parents' custody. (*Id.* at p. 242.) The parents appealed asserting substantial evidence did not support the court's jurisdictional finding. (*Id.* at pp. 243–244.) Similar to the present case, the parents' argument was the agency failed to prove they neglected or inadequately supervised the child or had reason to suspect the child may be in danger at the relatives' home. (*Id.* at p. 244.)

The appellate court in *A.S.* rejected the parents' argument and affirmed the juvenile court. The appellate court first explained the evidence "amply" supported a finding that the injuries were inflicted intentionally. (*A.S.*, *supra*, 202 Cal.App.4th at p. 245.) The court went on: "At the time of the jurisdiction hearing, the parents could not be ruled out as perpetrators. In [the medical expert]'s opinion, [the child]'s injuries could have been inflicted recently or up to a week before [the child] was taken to the hospital, a period during which the parents [and other relatives] all cared for her. The evidence supports a reasonable inference that one of the caretakers injured her, and concomitantly, a reasonable inference that [the child] was at substantial risk of serious physical harm, even life-threatening harm, in the parents' home as a result of their failure or inability to adequately protect her." (*Id.* at p. 246.)

The *A.S.* court rejected arguments similar to those the parents make in the present case, and the facts are substantively similar. Here, like in *A.S.*, the juvenile court's finding that Hudson had suffered a nonaccidental injury was supported by substantial evidence. Albin opined it was more likely than not the injury was inflicted nonaccidentally. Crawford-Jakubiak's testimony did not directly rebut or contradict Albin's opinion. Though he did not go as far as Albin to conclude it was more likely than not the injuries were inflicted nonaccidentally, he also said it was possible the injuries were abusive in nature. Though he said it was possible the injuries were accidental, he did not provide a reasonable medical explanation for Hudson's injuries or opine that one of the reported incidents caused the injuries. To the contrary, he opined most of explanations given by the parents likely did not cause the injuries. The juvenile

10.

court's finding that the injuries were inflicted nonaccidentally, like in *A.S.*, is amply supported by the record.

Like in *A.S.*, the court could not rule out the parents as the perpetrators. This conclusion was also supported by substantial evidence. It was opined the parents were among the caretakers in the window of time when the injury occurred. The risk was exacerbated in the present case by the parents' testimony demonstrating they were completely resistant to the possibility that someone hurt their child. Their belief the incidents they described injured Hudson was contradicted by both experts' testimony. In the worst-case scenario, the parents knew what happened to Hudson and were willfully concealing the mechanism of injury. Even in the case the parents did not personally inflict the injury, however, their unwillingness or inability to try to understand what happened or consider the possibility that Hudson was being abused, in light of troubling medical opinions from both experts, added to the substantial risk to both children that existed at the time of the jurisdictional hearing. This, like in *A.S.*, could lead to the reasonable inference that the children were at risk of harm because of the parents' failure or inability to adequately protect them. This risk existed at the time of the hearing because it was not known how this nonaccidental injury occurred, or how future injury could be prevented.

The parents' attempt to distinguish *A.S.* is not persuasive. The parents first contend *A.S.* is distinguishable because, in *A.S.,* there was no explanation of the injuries, and in the present case, the parents gave several explanations. We do not find this a significant distinguishing fact because though the parents gave explanations for the injuries, none of the explanations could have caused the fractures, by Albin's as well as their own expert's opinion. Based on the record, because the parents' proffered mechanisms of injury were not sufficient to explain the injury, they were in effect the same as no explanation at all.

11.

The parents also claim *A.S.* is distinguishable because the experts in the present case did not conclude the fractures could not have been sustained in the normal care of a child or through accidental means. The parents then highlight parts of the experts' testimony which could be used to support the conclusion the injuries were inflicted accidentally. Though none of the experts could conclusively testify the injuries were caused by nonaccidental means, as we have explained, the medical testimony supported the juvenile court's express finding that it was more likely than not the injuries were nonaccidental. The parents here are simply asking us to reweigh the evidence which is not our task on review.

The parents contend the present case is like *In re Roberto C.* (2012) 209 Cal.App.4th 1241 (*Roberto C.*). In *Roberto C.*, the appellate court found the juvenile court did not abuse its discretion by dismissing a section 300 petition where it found the evidence did not tie the parents to a suspected nonaccidental injury to an infant nor that they knew or should have known someone was injuring their child. (*Roberto C.*, at p. 1254.)

We do not find *Roberto C.* persuasive in light of the deferential standard of review we must apply. The court in *Roberto C.* encountered the same issue when faced with its analysis of *A.S.* The court explained:

> "In [*A.S.*], the juvenile court sustained a jurisdictional finding after a full hearing where there was also no explanation provided as to the cause of the injury; the parents provided no medical evidence to dispute the opinion that the injury was nonaccidental. For purposes of the hearing, the court accepted that an accident was the same as neglect, and sustained the petition under section 300, subdivision (b). [Citation.] On appeal, the court found substantial evidence to support the trial court's finding, accepting ' "the evidence most favorable to the order as true and [discarding] the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." ' [Citation.] Because the evidence supported the conclusion by the juvenile court that the parents could not be ruled out as perpetrators, a reasonable inference could be drawn to support jurisdiction under subdivision (b), and the appellate court declined to 'tamper' with the ruling

of the juvenile court. [Citation.] Applying the same standard of deference here, the conclusion of the juvenile court that there was no evidence that the parents knew or should have known of the abuse is supported by substantial evidence. We find no abuse of discretion." (*Roberto C.*, *supra*, 209 Cal.App.4th at p. 1256, fn. omitted.)

Like the court in *Roberto C.*, we must give deference to the lower court's decision. We note we must uphold an order if it is supported by substantial evidence, even when substantial evidence to the contrary also exists. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Here, because we find the juvenile court's ruling under section 300, subdivision (b) was supported by substantial evidence, we must affirm the court's assumption of jurisdiction. While the juvenile court in *Roberto C.* found no evidence linking the injuries to the parents, the juvenile court in the present case expressly found the parents could not be ruled out as perpetrators. This finding was supported by substantial evidence as the injuries to Hudson occurred during a window of time when the parents were among his caregivers. Further, as explained, there was additional evidence demonstrating risk of harm as evidenced by the parents' notable lack of concern at the medical evidence that the injuries to Hudson were inflicted nonaccidentally.

The court's finding that the children were described by section 300, subdivision (b)(1) was supported by substantial evidence.

## II. Discretion to Review Multiple Grounds for Jurisdiction

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; see *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.)

Here, the parents contend that if we find substantial evidence supported the juvenile court's findings under section 300, subdivision (b), we should nonetheless exercise discretion to review the findings under section 300, subdivision (a) because of the effects reversal may have on their inclusion in California's Child Abuse Central Index (CACI) (Pen. Code, § 11170, subd. (a)), pursuant to the Child Abuse and Neglect Reporting Act (CANRA) (Pen. Code, § 11164 et seq.). When an agency determines that a case of known or suspected child abuse or "severe neglect"[5] is determined to be substantiated, the agency shall forward a report to the Department of Justice for inclusion in the CACI. (Pen. Code, § 11169, subd. (a).)

The parents argue if we were to reverse the section 300, subdivision (a) finding, they would be able to request a hearing to challenge inclusion they would otherwise be precluded from obtaining even if we affirmed the section 300, subdivision (b) finding. To support their assertion, they cite Penal Code section 11169, subdivision (e), which reads, in part: "A hearing requested [by a person who is listed to challenge his or her

---

**5** Under CANRA, "severe neglect" is defined as "negligent failure of a person having the care or custody of a child to protect the child from severe malnutrition or medically diagnosed nonorganic failure to thrive," "where any person having the care or custody of a child willfully causes or permits the person or health of the child to be placed in a situation such that his or her person or health is endangered … including the intentional failure to provide adequate food, clothing, shelter or medical care." (Pen. Code, § 11165.2, subd. (a).)

14.

CACI listing] shall be denied when a court of competent jurisdiction has determined that suspected child abuse or [severe] neglect has occurred."

We do not take a position here of whether the parents are correct in their read of this provision. We note the factual allegations supporting both the section 300, subdivision (a) and (b) provisions are identical. In the abundance of caution, however, in the event our reversal of section 300, subdivision (a) may have a practical effect on whether the parents are permitted to challenge their inclusion in the CACI, we will exercise our discretion to review the juvenile court's findings under section 300, subdivision (a).

## III.   Section 300, Subdivision (a)

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (a) when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child *by the child's parent or guardian.*"  (§ 300, subd. (a), italics added.)

Here, the juvenile court expressly stated in its ruling it was "going to sustain the (a) allegation based on the fact that there was serious physical harm that was inflicted non-accidentally *by someone*. Again, I don't know who. Again, I'm not saying it was the parents. I'm not saying it wasn't the parents, but the Court is going to find it is a nonaccidental injury." (Italics added.) The court also struck the section 300, subdivision (e) allegation, for the stated reason the court found the evidence did not support the parents knew or reasonably should have known the child was being abused.

The parents contend the juvenile court's jurisdictional findings under section 300, subdivision (a) must be reversed because they do not logically follow from the juvenile court's other factual findings. We agree.

We find the issue presented here is a mixed question of law and fact. Accordingly, we apply the substantial evidence rule to the juvenile court's factual findings and determine independently whether the court's findings can support

15.

jurisdiction under section 300, subdivision (a). (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–801 (*Ghirardo*).)

We first look to the factual findings made by the juvenile court. (See *Ghirardo*, *supra*, 8 Cal.4th at p. 800.) Here, notably, the court avoided making a finding that the parents inflicted Hudson's injury when it repeated the statutory language verbatim until it replaced "by the child's parent or guardian" with "by someone." In addition, we presume had the court been convinced by a preponderance of the evidence[6] that a parent was the perpetrator, it would have sustained the section 300, subdivision (e) allegation or stated a different reason for striking it other than the court did not find the parents' "knew or should have known" of any abuse. The court's comments make clear to us the court did not find by a preponderance of the evidence that a parent inflicted the injury. We are not permitted to substitute our own factual findings for that of the juvenile court's determination that the evidence did not support a parent inflicted the injury by a preponderance of the evidence. Here, the evidence showed the parents were not the sole caretakers of Hudson and Tanner; the children were watched by family members and spent time out of the home at daycare. For these reasons, we find the court's comments demonstrating it was not convinced the parents were the perpetrators was not unreasonable. Accordingly, we defer to it. We express no opinion as to whether substantial evidence existed on the record to support whether the parents inflicted the abuse.

We next must determine whether the court's finding that the injury was inflicted by "someone," but not necessarily by a parent, can justify jurisdiction under section 300, subdivision (a). (*Ghirardo*, *supra*, 8 Cal.4th at p. 800.) The parties disagree about whether a parent must be established as the perpetrator. When interpreting statutes,

---

[6] " 'The petitioner in a dependency proceeding must prove by a preponderance of the evidence that the child who is the subject of a petition comes under the juvenile court's jurisdiction.' " (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379.)

" '[w]e consider first the words of a statute, as the most reliable indicator of legislative intent.' " (*John v. Superior Court* (2016) 63 Cal.4th 91, 95–96.)  We find it is clear from the plain language of the statute the Legislature intended the perpetrator to be a parent or guardian.  (See *Roberto C.*, *supra*, 209 Cal.App.4th at p. 1255.)  Further, "[w]hen language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful." (*In re Ethan C.* (2012) 54 Cal.4th 610, 638.)  A child comes within the court's jurisdiction under section 300, subdivision (e) when a specified harm is inflicted by a parent or guardian *or* another person if the parent knew or reasonably knew of the harm.  This contrasts with section 300, subdivision (a), which provides no such provision.  If section 300, subdivision (a) was meant to encompass harm caused by someone other than a parent, the Legislature would have said so.  We conclude based on the statute, while the specific perpetrator need not be identified, there must be a finding the perpetrator is a parent or guardian under section 300, subdivision (a).

Respondent insists that jurisdiction under section 300, subdivision (a) does not require a finding that the parents inflicted the injury citing *In re Christina T.* (1986) 184 Cal.App.3d 630, 640 (*Christina T.*).  We do not find respondent's comparison to *Christina T.* persuasive.  In *Christina T.*, a dependency petition was brought under a previous version of section 300, namely, subdivisions (a) and (d).  (*Christina T.*, at p. 639.)  At that time, section 300, subdivision (a) provided dependency jurisdiction may be taken over a child "[w]ho is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent or guardian actually exercising care or control." (*Christina T.*, at p. 639.)  The previous version of section 300, subdivision (d) provided dependency jurisdiction may be taken over a child "[w]hose home is an unfit place for him or her by reason of neglect, cruelty, depravity, or physical abuse of either of

17.

his or her parents, or of his or her guardian or other person in whose custody or care he or she is." (*Christina T.*, at p. 639.)

In *Christina T.*, the juvenile court found there was "no question" the child had been sexually molested by someone. (*Christina T.*, *supra*, 184 Cal.App.3d at p. 636.) Because, however, the court concluded the evidence was insufficient to prove the identity of the culprit, finding, based on the evidence, it could have been the father, the mother's boyfriend, both of them, or possibly some unidentified person, the court found the allegations untrue and dismissed the petition. (*Id.* at pp. 637, 640.)

On appeal by the child welfare agency, this court found the juvenile court in *Christina T.* had erred as a matter of law. (*Christina T.*, *supra*, 184 Cal.App.3d at p. 640.) This court found the juvenile court's statement that the child had been molested in her home, as a matter of law, also meant the court found the child "to be one who is in need of proper and effective parental care or control and has no parent willing to exercise or capable of exercising or actually exercising care or control (§ 300, subd. (a)), and the minor's home is an unfit place for her by reason of neglect, cruelty, depravity or physical abuse of either of her parents. (§ 300, subd. (d).)" (*Id.* at p. 640.) This court found under those subdivisions the court was not required to make a finding as to who specifically was sexually abusing the child. (*Ibid.*)

Here, respondent contends the previous version of section 300, subdivision (d), as applied in *Christina T.*, is comparable to the current section 300, subdivision (a) because it required "non-accidental abuse be inflicted on the minor by a parent." We disagree. The previous version of section 300, subdivision (d) stated in express terms jurisdiction could be taken where a *home* was unfit due to a parent, guardian, or any other custodian's "neglect, cruelty, depravity, or physical abuse." (*Christina T.*, *supra*, 184 Cal.App.3d at p. 639.) This relative "catchall" provision that includes not only physical abuse but "neglect" contrasts with section 300, subdivision (a)'s specificity that the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm

18.

inflicted nonaccidentally upon the child by the child's parent or guardian. (§ 300, subd. (a).)

For the reasons we have stated, we conclude that in light of the court's express comments that lead us to no other conclusion other than it did not find by a preponderance of the evidence a parent inflicted the injuries onto Hudson, we find as a matter of law the jurisdictional findings under section 300, subdivision (a) must be reversed.

## DISPOSITION

The juvenile court's jurisdictional order is reversed in part as to the jurisdictional findings that pertain to section 300, subdivision (a), as to both children; specifically, that the children had suffered, or there was a substantial risk the children would suffer, serious physical harm inflicted nonaccidentally upon the children by the children's parent or guardian.

In all other respects, the juvenile court's order is affirmed.


                                        DE SANTOS, J.

WE CONCUR:


MEEHAN, Acting P.J.


SNAUFFER, J.